IDA E. DAMUTH, Appellant, *v.* JENNIE M. LEE et al., Respondents.

1. WILL — LIFE INTEREST IN ALTERNATIVE BEQUEST. A will charging devisees of a farm with the payment of a certain sum of money to another person in annual installments, the first payment to be made one year after testator's death, and, in default of such payments, or any of them, giving a portion of the farm to such other person for life, and after her death giving to children "all the real or personal property" that said person receives from his estate, gives the latter a life estate only in either the money or the land.

2. RIGHT TO CHOOSE MORE FAVORABLE BEQUEST. Such devisees have the right, during the year succeeding testator's death, to determine which of the alternatives they will accept, and their election to make "default" in the payment of the money and thereby give up a part of the land is not taking advantage of their own wrong, although the land may be of less value than the money which they are directed to pay.

*Damuth* v. *Lee,* 29 App. Div. 28, affirmed.

(Argued May 18, 1900; decided June 19, 1900.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered

May 12, 1898, affirming a judgment in favor of defendants entered upon a dismissal of the complaint by the court on trial at Special Term.

On the 14th of February, 1896, Lafayette Lee, then about seventy years of age and a resident of Martinsburgh, Lewis county, N. Y., died, leaving a last will and testament disposing of both real and personal property. He left him surviving a widow and four children, the defendants being his daughters by the wife who survived him, and the plaintiff and her sister, Helen A. Foot, being his daughters by a former marriage. The defendants were twenty-six and twenty-three years of age, respectively, at the time of their father's death, and Helen Foot and the plaintiff were forty-nine and thirty-six years of age, respectively. The latter two were married and had children. The former were single and resided with their parents. The testator died seized of a farm known as the homestead, consisting of about 254 acres, upon which there were good farm buildings; of another farm of about 60 acres known as the Oliver farm, and of a third farm of about 29 acres known as the "Tug Hill" farm. He was also possessed of personal property consisting of money, farm implements, live stock, etc., of the value of about $3,000. After making a few minor bequests, the testator gave to his wife all his personal property. He next gave to his daughter Helen A. Foot a life estate in said Oliver farm, with remainder over to three of her sons, who are specifically named. By the seventh clause of the will he gives to the plaintiff and to the defendants the "Tug Hill" farm in equal shares. The sixth paragraph of said will is the one over which the present controversy has arisen. It directed the payment by the respondents to the appellant of the sum of $3,000 in annual installments of $500 each. The appellant brought this action to recover from the respondents the first of such installments. The court below dismissed the complaint.

*George W. Reeves* for appellant. The bequest to the plaintiff of $3,000, and the testator having made it the plain duty

of the defendants to pay it, being in language clear, decisive and unambiguous, cannot be cut down by the ambiguous and uncertain language of the remainder of the 6th clause. (*Goodwin* v. *Coddington*, 154 N. Y. 283; *Campbell* v. *Beaumont*, 91 N. Y. 464; *Banzer* v. *Banzer*, 156 N. Y. 429; *Roseboom* v. *Roseboom*, 81 N. Y. 356; *Clarke* v. *Leupp*, 88 N. Y. 228; 2 Jarman on Wills, 842; *Kinkele* v. *Wilson*, 151 N. Y. 277; *Keteltas* v. *Keteltas*, 72 N. Y. 312; *Freeman* v. *Coit*, 96 N. Y. 63; *D., L. & W. R. R. Co.* v. *Bowns*, 58 N. Y. 580; Bouv. Law Dict. 173; *Riggs* v. *Palmer*, 115 N. Y. 511.) The intention of the testator, as gathered from the whole instrument and the surrounding circumstances, was that in case defendants made default in the payment of the $3,000, the plaintiff had the power to accept the life estate in the sixty acres, or to enforce the payment of the $3,000, according to the direction in the will. (*Goodwin* v. *Coddington*, 154 N.Y. 286; *Banzer* v. *Banzer*, 156 N. Y. 429; *Clarke* v. *Leupp*, 88 N.Y. 232; *Roseboom* v. *Roseboom*, 81 N. Y. 358; *Phillips* v. *Davies*, 92 N. Y. 199; *Pond* v. *Bergh*, 10 Paige, 141; *Rodermund* v. *Clark*, 46 N. Y. 354; *Colrick* v. *Swinburne*, 105 N. Y. 507.) If the expression "in default of" admits of no construction except that the $3,000 legacy payable to the appellant by the respondents may be canceled by allowing her $1,289.58 only, then it is absolutely irreconcilable with the general context of the will and the clear intent of the testator and must be rejected. (*Phillips* v. *Davies*, 92 N. Y. 199; *Campbell* v. *Beaumont*, 91 N. Y. 464; *Lattimore* v. *Blumenthal*, 61 How. Pr. 360; *Ritch* v. *Hawxhurst*, 114 N. Y. 512.)

*C. S. Mereness* for respondents. The intention of the testator is to govern, so that the only question in this case is, what the intention of Lafayette Lee was when he framed the 6th clause of his will; in ascertaining that intention the court will take into account such circumstances as may properly throw light upon the testator's intention. (*Phillips* v. *Davies*, 92 N. Y. 199; *Ritch* v. *Hawxhurst*, 114 N. Y. 512; *Hoppock* v. *Tucker*, 59 N. Y. 202; *Lytle* v. *Beveridge*, 58 N. Y. 592.)

WERNER, J.  The language of the sixth paragraph of said will is as follows: " *Sixth.* I give and devise to my two daughters, Jennie M. Lee and Jessamine Lee, my homestead farm on which I now live, situate in the town of Martinsburgh, Lewis county, N. Y., consisting of about two hundred and fifty-four acres of land to be equally divided between them share and share alike, and I direct that said Jennie M. Lee and Jessamine Lee shall pay to Ida E. Damuth three thousand dollars, to be paid in five hundred dollars yearly payments, the first payment to be made one year from the time of my death, *and in default of such payments or any of them* I give and devise to said Ida E. Damuth sixty acres of said homestead farm on the north side of said farm, and next to Martin Sheldon's farm, and be wide enough to contain sixty acres of land to run the whole length of said farm, *to have and to hold the same during her natural life,* and after her death I give, devise and bequeath to *the children* all the real *or* personal property that said Ida Damuth receives from my estate, to be equally divided between them share and share alike."

In the controversy over this simple paragraph we have an apt illustration of the anomaly that in this age of legal construction the most simple and direct path to truth is often obstructed by technicalities which are invoked in the name of justice.  To the lay mind this language might seem to be simple, unequivocal and even conclusive.  But under the microscopical scrutiny of the trained legal mind it becomes a subtle thing of doubtful and mysterious import, which requires analysis by a process which, for want of a better name, is called construction.  It is a notable feature of this process that the difficulty of its application always increases in a geometrical ratio with the simplicity of the subject upon which it is to operate.  If we were left to depend upon our own resources we should probably find ourselves confronted with the query — what is there to construe ?  But as this is not the case, let us examine the language of the testator in the light of the suggestions presented for our consideration.  It is

urged that the testator, a just and intelligent man, whose will evinces a desire to divide his property fairly and equitably among the members of his family, as is clearly shown by the other parts of the instrument, has failed to do so in respect to the appellant, unless we can say that the sum of three thousand dollars, which the respondents are directed to pay to her, is to be regarded as an absolute and unqualified gift, the payment of which is to be secured by the alternative devise to the appellant of a life estate in sixty acres of land. It is said that the latter ·cannot be fairly considered the equivalent of the former, because their relative values are unequal; that land worth twenty-one hundred dollars or less ought not to be substituted for three thousand dollars in cash, particularly in view of the fact that the remainder in said lands goes to the children of the testator. Great emphasis is laid upon the expression that only "in default of such payments or any of them," is the appellant given the life estate in said lands, and from this she draws the conclusion that the respondents in attempting to choose between the alternatives given them under their construction of the will, are acting in their own wrong and seeking to frustrate the testator's intention. In the view which we take of this paragraph of the will, these are mere abstractions which, however interesting as such, must yield to the concrete fact that the testator seems to have manifested his desire in language so plain and unambiguous as to leave little room for either doubt or construction.

. The sixth paragraph is composed of a single sentence, which concludes with the words "to have and to hold the same during her natural life, and after her (appellant's) death I give, devise and bequeath to the children all the real or personal property that said Ida Damuth receives from my estate, to be equally divided between them, share and share alike." This language effectually disposes of the claim that the sum of three thousand dollars directed to be paid to the appellant was an absolute gift to her. The words of limitation found in that part of the sentence just quoted refer not only to the land, but to the money there mentioned, and the remainder in

either is manifestly to the children of Ida Damuth and not to the children of the testator. The real estate referred to in the concluding part of the sixth paragraph is not that mentioned in the seventh paragraph of the will, because the latter was given to the appellant and the respondents absolutely. According to the appellant's theory, however, there is still a discrepancy between the income on three thousand dollars in money and the value of the land, which is found to be twenty-one hundred dollars. It is urged that this operates to cut down the estate which the first part of the sixth paragraph gives to her. This discrepancy is more apparent than real. The three thousand dollars was to be paid in six annual installments without interest, while the alternative gave her the use of the sixty acres of land at the end of the first year. But without considering for the present the extraneous circumstances which throw light upon the equities of the situation, let us again refer to the language of the will in the effort to ascertain the testator's intent. In doing so we should not lose sight of the fact that this is an exceedingly simple instrument both in language and scheme. Its most prominent feature is the absence of much of the technical legal verbiage which so frequently obscures rather than illuminates. In plain, concise and coherent language the testator says that the respondents shall pay to the appellant the sum of three thousand dollars in yearly payments of five hundred dollars each, and in default of such payments or any of them he gives and devises to the appellant sixty acres of land "to have and to hold the same during her natural life." It is obvious that this created nothing more than a life estate in either the money or the land and neither was to take effect until the period fixed for the decision by the respondents should have elapsed.

Conceding, however, for the purpose of the discussion that there may be some slight ambiguity in the language, there seems to be none as to the testator's intent. The dominant idea which seems to pervade this paragraph is that the appellant should have the use of a certain sum of money, or its

equivalent in land, and that the respondents should have the
right during the year succeeding their testator's death to deter-
mine which of the alternative commands of the will they would
obey.    If that is not the fair import of the language of the
will, it is meaningless.    If we have ascertained the testator's
intent, it matters not that the alternative chosen by the
respondents seems to be less favorable to the appellant than
the other would have been.    In examining this paragraph of
the will we must remember that the testator's intent must
govern, even though inapt or inaccurate modes of expression
may seem to obscure it.    The cardinal principle which must
guide all judicial analysis of wills is that construction is not
reconstruction.    When a will is to be construed it is not to be
made over.    When the language is plain and unambiguous,
effect must be given to its obvious import.    When it is
indefinite, uncertain or obscure, but the testator's intent is
manifest, language must yield to intention.    We, therefore,
close this branch of the discussion as it was commenced, with
the suggestion that the language of the will seems to be
explicit and free from doubt.    Conceding, however, that it
may be ambiguous, the testator's intent is obvious.

But let us indulge for a moment in the assumption that both
language and intent are so doubtful and ambiguous as to com-
pel resort to extraneous evidence.    In that view of the case
the record before us contains abundant evidence to sustain the
construction of the will contended for by the respondents.
Appellant was a married woman, settled in life, with a hus-
band who owned some farming lands, a portion of which was
opposite the sixty acres in question.    Not only the testator
but his neighbors regarded the homestead farm as being worth
fifty dollars an acre.    Any detached portion of it without
buildings would, of course, be worth less; but appellant's
husband having other lands and buildings near by, could work
this sixty acres quite as advantageously as though it were
situated on the same side of the road with his own land.
Under these circumstances it would be quite natural for the
average man, and particularly for the testator, to assume that

the detached land would be worth about as much per acre as the whole together. Thus the land and money mentioned in the sixth paragraph of the will might fairly be regarded as the equivalents of each other. The respondents were unmarried and resided on the homestead farm. They had no estate of their own, except this farm which came to them under this will. Presumably it would be impossible for them to make the yearly payments provided for in said sixth clause without borrowing money for that purpose. With this possibility before him what was more natural than that the testator should give the respondents the right to decide whether they would borrow money upon the whole farm or conclude to part with a portion of it.

The appellant contends that the respondents by entering upon and using the farm during the year succeeding the testator's death, elected to keep the farm and pay the money. Upon this point it is enough to say that upon ample evidence the courts below have found that there was no such election.

None of the errors assigned upon the rulings made at the trial is of sufficient merit to require discussion.

In the expression of these views we have intentionally refrained from the citation of authorities, because the principles by which this case must be governed are so well settled as to be elementary; and in the application of these principles each case must rest upon its own peculiar facts.

The judgment of the court below should be affirmed, with costs.

GRAY, HAIGHT, MARTIN and LANDON, JJ., concur; PARKER, Ch. J., and O'BRIEN, J., dissent.

Judgment affirmed.